UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GINA HENDERSON,

     Plaintiff,

v.                               Case No. 19-10441

                                    Honorable Victoria A. Roberts

DELTA AIRLINES, INC.,

     Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DELTA'S MOTION FOR SUMMARY JUDGMENT [ECF No. 29]

### I.    INTRODUCTION

This is an employment discrimination case.

Gina Henderson ("Henderson"), a Black female and former Delta Airlines Inc. ("Delta") flight attendant, alleges that Delta (1) discriminated and retaliated against her based on her gender and race and (2) failed to provide reasonable conditions to accommodate her disability, post-traumatic stress disorder ("PTSD").

Henderson asserts the following claims:

Count I      Discrimination and Retaliation Based on Sex/Gender and Race in Violation of Title VII of the Civil Rights Act of 1964;

Count II  Violation of the Americans with Disabilities Act ("ADA"); and

Count III  Violation of the Michigan Persons with Disabilities Act ("PWDCRA").

Before the Court is Delta's motion for summary judgment [ECF No. 29]. Delta seeks dismissal of all of Henderson's claims.

## II. BACKGROUND

### A. Pre-Takeoff on Detroit-Minneapolis Flight (DL23)

On July 25, 2017, Henderson was part of the flight crew for Delta 23 (DL23) from Detroit to Minneapolis. Daniel Galindo Villas Boas ("Boas"), a white man, also served as a flight attendant. Henderson and Boas had never worked together before. Flight leader LeJing Van Rhee ("Van Rhee") and flight attendant Ricardo Corazzi ("Corazzi") were also on board.

Henderson was preparing to move to Belize and at some point, took a call from her real estate broker. Henderson disputes that she was on the phone during boarding. She testified that before boarding began, she entered the bathroom to take the call on her cell phone. But, Corazzi testified that when he informed Henderson that boarding had begun, Henderson was still on her phone. Boas says once boarding started Henderson went into the

2

bathroom for about 10 minutes to take the call. Displeased with Henderson's actions, Boas called Corazzi and told him that he "need[ed] that girl to get off the phone," referring to Henderson. Corazzi was unsure whether Henderson was still on the phone in the bathroom when Boas complained.

After she learned of Boas' complaint, Henderson says she approached him in a friendly manner to introduce herself so that she could explain why she was on her phone. She says Boas responded angrily, waving his hands and pointing his finger, calling her a "girl." Henderson approached the captain to ask for his assistance and for a Field Service Manager ("FSM"). The captain did not want to get involved; Henderson agreed to try to work with Boas through the flight.

### B. During Flight DL23

During the flight, Henderson says Boas was uncooperative and angry. After the flight crew finished beverage service Boas spoke to Henderson in an "aggressive" tone and waived his finger in Henderson's face. To try to get Boas to stop harassing her, Henderson says she told Boas that she was a woman and maybe he should speak to her husband instead of her.  Boas says he took this as a threat. Henderson says Boas suddenly lunged at her over both her and his cart. He pushed around one of the carts to reach

3

Henderson, and she pushed up against the front door of the plane to avoid him. Van Rhee grabbed Boas' arms to prevent him from touching Henderson.

After this altercation, Henderson went to the rear of the plane for the remainder of the flight. Henderson called the captain from the plane's phone to report the altercation and request an FSM when the flight landed. When the flight landed no FSM was present. Corazzi and Van Rhee waited with Henderson for FSM Daniel Streed ("Streed") to arrive. Boas left. When Streed arrived, he and Henderson talked. Boas then approached them and insisted on telling Streed his side of the story. Henderson stepped away and allowed Boas to give his statement. She eventually gave Streed her account but testified that he did not take her seriously and that he sided with the captain and Boas. After talking to Streed, Henderson spoke to another FSM, Kendra Vinson ("Vinson"). Vinson acknowledged Henderson's assault allegation and noted that the captain was dismissive of the situation.

### C. Delta's Investigation

FSM Renee Mullen ("Mullen") led the investigation into the incident on DL23. Mullen and HR Manager Courtney Ebert ("Ebert") referred the incident to the Workplace Violence Committee.

4

After the incident Henderson worked one shift. She says she suffered from too much emotional trauma to continue working. On August 11, 2017, Henderson submitted a claim for disability leave for emotional distress. In connection with Henderson's disability claim, her treating psychologist notified Sedgwick, Delta's disability insurance carrier, that Henderson exhibited PTSD symptoms. Sedgwick granted Henderson's request for short term disability leave due to emotional distress. On August 28, Henderson saw her treating physician for pain in her right hand. She notified Sedgwick and per its policy saw a physician at Concentra. The physician diagnosed Henderson with a right wrist sprain as a result of a "fall onto [her] outstretched arm while at work." Henderson's wrist injury did not disable her from working.

On September 14, 2017, Henderson submitted a report through Delta's EthicsPoint categorizing the incident with Boas as a "Workplace Violation." She filed an Equal Employment Opportunity Commission ("EEOC") charge of race and gender discrimination on the same date.

In October 2017, the Workplace Violence Committee (the "Committee") convened to discuss the incident. Henderson says the Committee's investigation did not focus on the assault; rather it focused on whether she suffered a wrist injury during the incident instead of whether she was assaulted. The Committee considered issuing corrective action notices

5

(CANs) for Henderson and Boas but ultimately only issued Boas a CAN because Henderson was still on disability leave.

In November 2017, Henderson submitted an Accommodation Request Form. Initially, she requested that she never be placed on flights with Boas. Later, in an interactive call between Delta and Henderson, she suggested that Delta write a "code" that would prevent her from being scheduled to work with Boas. Delta advised Henderson that it could not enter a code in its system that would guarantee that she and Boas would never fly together. Delta discussed alternatives with Henderson to manage her schedule. Henderson was open to Delta's suggestions but asked that if she ended up on a flight with Boas, that she not be disciplined for refusing the flight. Delta concluded that it was not feasible to reprogram Delta's flight system in a manner that would guarantee Henderson's request. Delta denied her request.

### D. Termination of Henderson's Employment

Delta discussed the status of Henderson's employment in January 2018 following an in-person meeting in Atlanta. After the discussion, HR manager Ebert prepared a termination recommendation for Henderson. Ebert based her recommendation on Henderson's: inconsistent statements

6

concerning her injury; engagement in a personal past time; contribution to a minimum crew violation; and unprofessional actions. Delta terminated Henderson by letter on March 2, 2018.

## III.   ANALYSIS

### A. The Court Denies in Part and Grants in Part Delta's Motion For Summary Judgment as to Henderson's Discrimination Claim

The Court is required to review the evidence presented in the light most favorable to Henderson. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If after doing that the Court determines there is no genuine issue of fact, Delta's motion must be granted. Fed. R. Civ. P.56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the causes of action or a defense advanced by the parties. *Kendall v Hoover Co.*, 751F.2d 171, 174 (6th Cir. 1974).

### 1. Henderson does not establish a *prima facie case of* discrimination

Count I alleges that Delta discriminated against Henderson because of her gender and race. The threshold issue is whether Henderson can establish a *prima facie* case of sex/gender and race discrimination under Title VII. To establish such a *prima facie* case, Henderson must show that:

(1) she is a member of a protected group; (2) she was subject to an adverse employment action; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776-777 (6th Cir. 2016) (citing *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)).

Delta does not dispute the first three elements of Henderson's case. The Court focuses on the final element: whether similarly situated nonprotected employees were treated more favorably. This is where Henderson's case fails.

A similarly situated employee must have: (1) dealt with the same supervisor; (2) been subject to the same standards; and (3) engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish the "similarly situated" employee's conduct or the employer's treatment of them for it. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). An employee with whom a plaintiff seeks to compare herself must be similarly situated in all relevant aspects. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796. 802 (6th Cir. 1994).

Henderson says Boas is similarly situated to her. Delta disagrees. Delta argues it terminated Henderson for several reasons in addition to her

involvement in the altercation, including her: alleged phone use in violation of its safety policy; minimum crew violation when she, Boas, and Corazzi stepped onto the jet bridge; and alleged misrepresentation in connection with her workers' compensation claim. Henderson "flatly denie[s]" using her cell phone during the boarding process and argues that Delta's management focused its investigation on her alleged misrepresentation rather than the altercation. She says this strengthens her claim of intentional discrimination. Henderson also says that although Boas was involved in the onboard altercation, he only received a CAN for his involvement, while Delta terminated her. Henderson says Boas assaulted her. Delta did not investigate his actions.

Henderson says the Court should look at the comparable seriousness of Boas' actions to determine whether she meets her burden to establish a *prima facie* case and pretext. *See Jackson*, 814 F.3d at 779. But the Court need not do this because Boas and Henderson were not similarly situated employees. While they both engaged in the altercation and may have been involved in a minimum crew violation, the evidence shows that Henderson engaged in an additional infraction by using her cell phone during the boarding process. Although Henderson denies being on her cell phone

during boarding, she provided a statement to Delta the day after the incident stating:

> The Boarding process began when my phone rang…I [started] walking toward the aft lavatory to take the call and asked Ricardo to please cover for me in the Aisle while I take the quick call. I was in the lavatory on the call less than 10 min. I turned my phone off, stored in my purse and turned and briefed my exit row passenger that had just gotten settled into his seat.

Henderson's statement establishes her cell phone use during the boarding process.

Because Henderson and Boas were not similarly situated in all relevant aspects, the Court **GRANTS** Delta's motion for summary judgment with respect to the sex/gender and race discrimination portions of Count I.

### 2. Henderson establishes a *prima facie* case of discriminatory retaliation

#### a. *Prima facie case*

Count I also alleges that Delta retaliated against Henderson by terminating her because she complained of gender and race discrimination. To proceed with Count I, Henderson must establish a *prima facie* case of retaliation under Title VII. To prove retaliation, Henderson must show that: (1) she engaged in a Title VII protected activity; (2) Delta knew that she engaged in the protected activity; (3) Delta subsequently took an adverse

employment action against her; and (4) the adverse action was causally related to the protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Delta does not dispute that Henderson meets the first prong of her retaliation claim. But Delta argues that Henderson failed to establish the remaining prongs because the employees involved in the decision to terminate Henderson had no knowledge of her EEOC charge when the termination decision was made. Delta is wrong.

As to the second prong — whether Delta knew Henderson engaged in a protected activity — Henderson reported race and sex discrimination to FSMs Vinson, Streed, and Mullen, Human Resources, and filed an EEOC charge alleging race and sex discrimination. This made Delta aware that Henderson engaged in protected activity. Henderson alleges that Delta took adverse employment action against her by suspending and ultimately terminating her employment. This is sufficient for prongs three and four.

The Court also looks at whether Henderson satisfies her burden on the final prong — whether her termination was causally related to engaging in protected activity. Henderson produced evidence showing that Delta considered issuing her a CAN in October 2017 but by the time she returned

from disability leave and Delta was aware of her EEOC charge, it decided to fire her.

Delta says that Henderson cannot present evidence to establish a triable issue as to a causal connection between her protected activity and the adverse action. Delta is wrong.

The burden at the *prima facie* stage is minimal. *Nguyen*, 229 F.3d at 566. It only requires Henderson to submit some evidence from which the Court can draw reasonable inferences. *Id*. Henderson produced evidence of her complaints to FSMs and HR. Her EEOC charge presents a causal connection from which a jury could reasonably conclude that Delta retaliated against her because of her complaints of discrimination. Henderson meets her burden on the fourth prong.

### b. Articulated legitimate non-discriminatory reasons

Because Henderson establishes a *prima facie* case, the burden of production of evidence shifts to Delta to "articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Delta cites four reasons for Henderson's termination, her: (1) cell phone use while passengers were on board; (2) role in a minimum crew

violation; (3) active role in the altercation with Boas; and (4) differing stories regarding her wrist injuries. Delta says "[t]hese variances were significant enough to bring Henderson's integrity into question." Delta's burden is merely one of production, not persuasion, and it does not involve a credibility assessment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Delta's explanations for Henderson's termination meet this burden, so the Court turns to the question of whether Henderson established that Delta's proffered reasons are pretextual.

### c. Pretext

To establish pretext Henderson must demonstrate that the proffered reason: (1) had no basis in fact; (2) did not actually motivate her termination; or (3) was insufficient to motivate her discharge. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008). In any case, Henderson must produce sufficient evidence from which a jury could reasonably reject Delta's explanation and infer that it intentionally discriminated against her. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009); *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003).

First, Henderson argues that Delta's proffered reasons for terminating her were false. She says that Delta's explanation of its decision to terminate

13

her were based on inaccuracies that are unworthy of credence. Second, Henderson says that Delta's proffered reasons did not actually motivate its decision to terminate her. Finally, she contends that the Court should not grant summary judgment on her retaliation claim because Boas' actions were more serious than hers under the comparative seriousness analysis in *Jackson*, 814 F.3d at 779.

Henderson says that Delta's proffered reasons for terminating her were not based in fact. Delta cites four reasons for its decision to terminate Henderson, and Henderson presents evidence raising a genuine issue of material fact to at least three of Delta's reasons: (1) her role in the minimum crew violation; (2) her role in the altercation with Boas; and (3) the explanation of her wrist injury.

### i. Henderson raises a genuine issue of material fact on the minimum crew violation

Henderson maintains that she did not step onto the jet bridge and commit a minimum crew violation. She provides testimony from FA Van Rhee that Van Rhee did not observe either Henderson or Boas step onto the jet bridge. Delta does not submit evidence that anyone onboard saw Henderson step onto the jet bridge.

### ii. Henderson raises a genuine issue of material fact that Boas was the aggressor

Although Delta did not focus its investigation on the alleged physical assault during the altercation, Henderson provides evidence that suggests Boas might have been the aggressor. Henderson testified, and FAs Van Rhee and Corazzi corroborated; Boas attempted to lunge over carts and "get at" Henderson.

### iii. There is a genuine issue of material fact on whether Henderson provided inconsistent statements about her wrist injury

Delta contends that the record, including the testimony from Mullen and Ebert, shows that Henderson made false or misleading statements regarding her wrist injury. Henderson argues that Delta came to its decision to terminate her based on inaccuracies. In relevant part, Henderson claims that Delta misrepresented her conversations with Sedgwick and Workers' Compensation, leading Mullen to note "five different accounts of the event [on the Minneapolis flight]."

Although Mullen's report points to some variation regarding Henderson's wrist injury, each essentially points to the same finding — that Henderson fell back while in the plane's galley and used her hands to brace herself as Boas lunged at her. The two statements written by Henderson

directly after the incident were that she "backed up against the door" and "fell back, bracing [herself] against door 1L." It is not clear to the Court that Henderson made misleading or inconsistent statements regarding her wrist injury.

Henderson also provides evidence suggesting a material issue of genuine fact concerning the statements and investigation surrounding her injury. A reasonable jury could decide that Henderson did not make misleading statements.

Although Delta claims that its decision to terminate Henderson was based on the particularized facts when it made the decision, Henderson sets forth sufficient evidence from which a jury could conclude that Delta did not rely on all of the evidence before it. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 116 (6th Cir. 2001).

The Court **DENIES** Delta's motion for summary judgment on the retaliatory discharge portion of Count I. Genuine issues of material fact exist.

### B. The Court Denies Delta's Motion for Summary Judgment With Respect to One of Henderson's Failure to Accommodate Claims

Henderson says that Delta failed to accommodate her disability, PTSD, and instead terminated her employment. She makes these failure to

16

accommodate claims under the ADA and PWDCRA. These statutes "share the same purpose and use similar definitions and analyses," and Michigan courts "have relied on the ADA in interpreting the PWDCRA." *Chiles v. Mach. Shop, Inc.*, 238 Mich. App. 462, 472 (1999). This Court will do the same.

The ADA requires employers to "mak[e] reasonable accommodations." 42 U.S.C. § 12111(b)(5)(A). To establish a prima facie case of failure to accommodate, Henderson must show that: (1) she was disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) Delta knew or had reason to know about her disability; (4) she requested an accommodation; and (5) Delta failed to provide the necessary accommodation. *Aldini v. Kroger Co. of Michigan*, 628 Fed. Appx. 347, 350 (6th Cir. 2015) (internal citation omitted). The plaintiff bears the initial burden to show "that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways Inc. v. Barnett*, 535 U.S. 391, 401 (2002). The defendant then must show either "special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id*. at 402.

Delta does not deny that Henderson set forth a prima facie case of disability discrimination but argues that she failed to request a reasonable accommodation. The reasonableness of a proposed accommodation is a

17

question of fact. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998). In discussion with Delta, Henderson identified two potential accommodations for her PTSD, that she not be: (1) placed on flights with Boas and (2) disciplined if she refused a flight with Boas. Henderson says her request to not be placed on flights with Boas is reasonable, and this is demonstrated by Sedgwick's determination that the request was reasonable in light of the circumstances. If either of these accommodations could have been accepted as reasonable, summary judgment in Delta's favor is inappropriate.

Henderson also argued in her response that Delta refused her request to transfer to Atlanta; she raises the argument for the first time in response to Delta's motion. "A plaintiff may not expand [her] claims to assert new theories for the first time in response to a summary judgment motion." *Desparois v. Perrysburg Exempted Village Sch. Dist.*, 455 Fed. Appx. 659, 666 (6th Cir. 2012) (internal citation omitted). The Court will not consider that argument.

### 1.  Henderson's request to avoid being scheduled with Boas is unreasonable

Henderson requested that she not be scheduled to work with Boas. To accomplish this accommodation, Henderson suggested that Delta write a

"blocking" code to prevent scheduling issues with her and Boas. Delta said it was not possible to use its scheduling system to "block" Henderson and Boas from working together and said that Henderson would be subject to discipline.

Delta says Henderson's request was unreasonable for three reasons, it: (1) infringed on the seniority system; (2) was unreasonable as a matter of law; and (3) was not reasonable due to associated operational disruption and ineffectiveness.

### a. Henderson's requested accommodation that Delta implement a "blocking" code was unreasonable because it would infringe on Delta's seniority system

Delta says Henderson's requested accommodation was unreasonable because it would affect other flight attendants by infringing on Delta's preferential seniority system. If Delta agreed to avoid scheduling flights with Henderson and Boas both working as flight attendants, it says that it might mean that more senior flight attendants would get bumped, Boas might be removed from a flight/rotation that he was entitled to, or a more senior flight attendant might be required to work a trip that would have been assigned to either Henderson or Boas.

The Supreme Court held that ordinarily, an employer's showing that an employee's requested accommodation would violate the rules of an established seniority system is sufficient to show that the accommodation request is not reasonable. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 404 (2002). But, the plaintiff remains free to show that special circumstances warrant a finding that despite the presence of a seniority system, the requested "accommodation" is "reasonable" on the particular facts. *Id*. at 405.

Henderson does not dispute Delta's evidence that her request to prevent scheduling her with Boas would violate its seniority system in scheduling flights. Nor does she present any special circumstances showing why "an exception to [Delta'] seniority policy can constitute a 'reasonable accommodation' even though in the ordinary case it cannot." *See Gearhart v. E.I. du Pont de Nemours and Co.*, -- Fed. Appx., 2020 WL 6483141 at *7 (6th Cir. Nov. 4, 2020). Henderson's proposed accommodation that Delta implement a "blocking" code to prevent her and Boas from working together was unreasonable. This claim does not survive summary judgment.

Delta also argues that Henderson's requested accommodation is unreasonable as a matter of law and that it would create operational

disruption and ineffectiveness, the Court need not decide those arguments because the seniority system argument is dispositive.

## 2. Henderson's request that she not be subject to discipline if she refused a scheduled flight with Boas was reasonable

Henderson asked for a second accommodation – that she not be disciplined for refusing a flight with Boas if one were assigned. That request was not unreasonable.

There is a disputed question of fact as to whether Henderson met her burden to propose an initial reasonable accommodation – that she not be disciplined for refusing fights scheduled with Boas. Henderson testified and Delta confirmed that flight attendants can utilize various techniques to control their schedules. Henderson says that she agreed to utilize all the available scheduling options to avoid flying with Boas but asked that if despite utilizing the options, she was scheduled to fly with Boas, that she not be disciplined for rejecting the flight. Delta does not dispute that it denied this request.

Based on evidence, there does not appear to be a reason why Delta would have to discipline Henderson for refusing to work with the one employee whom she sought to avoid. Henderson presents evidence that there are systems in place to ensure that each trip has the required staff, even when there are same day changes. There is a genuine factual dispute

21

concerning whether Delta failed to provide Henderson the requested accommodation.

The Court **DENIES** Delta's motion for summary judgment on Counts II and III.

## IV.    CONCLUSION

The Court **DENIES IN PART AND GRANTS IN PART** Delta's motion for summary judgment. The Court **DENIES** summary judgment on the retaliatory discharge portion of Count I. It also **DENIES** summary judgment on Count II and Count III. The Court **GRANTS** summary judgment on the sex/gender and race discrimination claims in Count I.

The retaliatory discharge portion of Count I: Discrimination Based on Sex/Gender and Race in Violation of Title VII of the Civil Rights Act of 1964, Count II: Violation of the ADA, and Count III: Violation of the PWDCRA, will proceed to trial.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Date: February 9, 2021